# THE UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE,

## A Body Corporate,

### *vs.*

# MAGGIE PHILLIPS.

*Common carriers: electric cars; injury to passengers; unusual jerks.*

Where a passenger (while in a place of safety) is injured by an unusually sudden start or stop, or by a jerk or jolt of unusual severity, of the public carrier's vehicle, there is a presumption of negligence on the part of the carrier.     p. 333

In such cases, where a *prima facie* case is presented, it is a question of fact for the jury.     p. 333

*Decided November 15th, 1916.*

Appeal from the Court of Common Pleas of Baltimore City.  (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph C. France* (with whom was *J. Stanislaus Cook* on the brief), for the appellant.

*Richard A. Miller, Jr.,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellant owns and operates an electric railway in the City of Baltimore. On the afternoon of July 28, 1913, Mrs. Maggie Phillips, the appellee, was a passenger on one of its cars, and she testified that she was injured by a fall which fractured her kneecap while a passenger on the car. If the evidence produced on behalf of the plaintiff be true, there can be no doubt that she was very seriously and painfully, and probably permanently, injured. But the nature and extent of her injuries were matters exclusively for the jury, and are not subjects for review on this appeal.

The appellee sued the railways company in the Court of Common Pleas and recovered a judgment against it, and the appeal before us was taken by the company from that judgment. The declaration contained one count. It alleged that on or about July 28th, 1913, the defendant accepted the plaintiff as a passenger for hire on an eastbound car of its line at the corner of Lexington and Caroline streets, and that "after the plaintiff had boarded said car and had taken a place, standing in the aisle, it being necessary for her to do so, and while she was using due care, the agents and servants of the defendant in the charge and control of said car, negligently and carelessly caused it to start with a sudden and unusual jerk, and plaintiff was thrown violently to the floor on her knees, that in consequence thereof the plaintiff's left kneecap was broken and she was otherwise badly shocked and injured, etc."

The Record contains two exceptions—one relates to the admission of testimony and the other to the rulings on the prayers. The important questions in the case arise upon the defendant's first, second and third prayers, by which it was

sought to withdraw the case from the consideration of the jury, and upon the defendant's eighth prayer, which is here transcribed:

"The Court instructs the jury, that it is a well known fact that electric cars cannot be operated with perfect smoothness when being started or brought to a standstill or while in motion, and that there are certain irregular movements to which they are subject, and which do not justify the inference of negligence or carelessness on the part of those in charge, and even if the jury find, that at the time of the accident mentioned in the testimony in this case, the car gave a sudden and unusual jerk, that fact alone is no evidence of negligence on the part of the railway company, and the jury are further instructed that the plaintiff in this case is not entitled to recover unless the jury shall find from the evidence, that the motorman, in starting his car, did so in a careless and unusual manner."

In support of the case made by the declaration the plaintiff offered evidence tending to prove the following facts: That on the afternoon of the day on which she was injured, she boarded a north-bound Preston street car at Caroline and Pratt streets, paid her fare and got a transfer for the corner of Lexington and Caroline streets, where she got off and waited for a car which came up Lexington street and turned into Caroline street at this transfer point and which she intended to take to reach her home. There is a curve in the track at the corner of Lexington and Caroline streets, and at the time the plaintiff boarded the car at this point it was standing "perfectly still" with its rear end resting on the curve. It was an open summer car, with no aisle, and the seats ran transversely across the entire width of the car. The plaintiff testified that when she got on the car there were no vacant seats, that she stood between the seats, and held on to the back of the seat in front, that was the only way she could hold. She said: "I stood there between the two seats holding myself by the tips of my fingers the best I

could, and while I was standing there the conductor pulled the bell and the car started. I couldn't tell you exactly how far, but it could not have been more than *a couple of feet* when there was a *sudden and unusual jerk* that caused the passengers to scream out, and at the same time I fell to my knees, and then the conductor pulled the bell and came to my assistance." When asked why she called the jerking sudden and unusual, she said: "You know often when a car starts there is a little jerk, and you have to be prepared for this, but this was such a violent jerk that it caused the passengers to scream, Oh!, and it swayed me forward and threw me down on my knees. * * * The conductor knew I fell, the crash was terrific, and everybody in the car heard it. It was as though you would tear a big piece of muslin, and he came to me and said are you hurt, and I said, I don't know, but I think there is something the matter with my knee." She said that when she reached North Lakewood avenue and Fairmount avenue the conductor helped her off, that she was unable to walk and sank down on the street, and that she then realized how badly she was hurt. She was taken to her home in a wagon, and a physician summoned, who testified as to the serious nature of the plaintiff's injuries, which the evidence tends to show she sustained from the fall in the car.

It is not claimed that the plaintiff was guilty of contributory negligence, but the position of the appellant is that the facts stated do not raise a presumption of negligence on its part in the management or operation of the car, and as there was no other evidence on the question of negligence offered by the plaintiff, the Court should have directed a verdict for the defendant. This proposition is asserted in the defendant's first, second and third prayers, which the Court refused to grant. JUDGE ALVEY said in *B. & O. R. R.* v. *Hauer*, 60 Md. 449, that: "It is settled, by all respectable authority, that while the carriers of passengers are not insurers of absolute safety, yet they are bound to exercise reasonable care,

according to the nature of their contract; and as their employ-ment involves the safety of the lives and limbs of their pas-sengers, the law requires the highest degree of care which is consistent with the nature of their undertaking. *Warren* v. *Fitchburg R. R. Co.,* 8 Allen, 227; *Railroad Co.* v. *Worth-ington,* 21 Md. 275; *State, use of Coughlan,* v. *Railroad Co.,* 24 Md. 84, 102; *Bannon* v. *Railroad Co.,* 24 Md. 108, 124."

The appellant is held to the same measure of duty towards its passengers. *City Passenger Ry. Co.* v. *Nugent,* 86 Md. 349. In any case where it is alleged that a carrier has failed to discharge its duty to its passenger, the special facts and circumstances of each particular case must be carefully con-sidered. The authorities are quite uniform in holding that no fixed rule can be laid down as to what jerking, lurching or swaying of the car will give rise to on inference of negli-gence in its management. But we think, both upon reason and authority, a sudden jerk of such unusual severity as that described in the evidence and manifested by its results is sufficient to raise a presumption of negligence on the part of the defendant. In *Strauss* v. *United Railways Co.,* 101 Md. 497, where the movement of the car was described as "a sudden and unexpected and unusual lurch" the precise ques-tion here presented was not passed upon. That case dealt with the question of contributory negligence on the part of the plaintiff—primary negligence appearing to have been assumed. In *Callis* v. *United Rys. & Elec. Co.,* 128 Md. 406, where the plaintiff was standing upon the steps of a moving electric car and was thrown therefrom by a movement of the car which was described as "just a sudden jerking forward," it was held that such a movement did not give rise to an inference of negligence. In commenting upon the facts in evidence, JUDGE PATTISON said: "It is not dis-closed by the record that such forward movement of the car was anything more than the ordinary and usual motion incident to the running of electric cars, and as such does not as an evidentiary fact in itself create a presumption of

negligence on the part of the defendant carrier. A sudden jolt or jerking forward of the car, as the plaintiff describes it, *not unusual or extraordinary,* is no evidence of negligence on the part of the defendant company." The jerk or lurch of the car as described by the plaintiff in this case, judged by its results upon her and upon the other passengers, and apart from the adjectives used by her in describing it, shows it to have been of an unusual and extraordinary character, and so out of the ordinary as to suggest negligence in the management or control of the particular car.

It is said in 5 *R. C. L.* 80, that: "With regard to the effect of sudden starts or stops, jerks or jolts of the carrier's vehicle as raising the presumption of negligence where a passenger is injured thereby, while it would seem that no such presumption arises where such stopping, starting and jolting are only such as are incident to the operation of the carrier's vehicle, and the burden is on the plaintiff to prove the carrier's negligence, yet there are numerous decisions to the effect that a presumption of negligence on the part of the carrier arises from such occurrences where the start or stop is unusually sudden, or where the jerk or jolt is of unusual severity." Many cases are cited by the authority in support of this rule. In *Ilges* v. *St. Louis Transit Co.,* 77 S. W. 93, where the evidence showed that a passenger on a street car was thrown from the body of the car into the street by a sudden lurch of the car, it was held that these facts were sufficient to authorize a finding that there was such an unusual and severe lurching as to constitute negligence; and in *Consolidated Traction Co.* v. *Thalheimer,* 37 Atlantic Reporter, 132, the Court of Errors and Appeals of New Jersey announced the same rule. We are of opinion that the evidence of the plaintiff made out a *prima facie* case of negligence and that the Court committed no error in refusing the first, second and third prayers of the defendant.

The first exception was taken under these circumstances. There was a conflict on a material point in the testimony of

Mrs. Phillips and Frank J. Tricker, Jr., a witness produced on the part of the defendant. To impair the credibility of the testimony of this witness he was asked on cross-examination if he had not been arrested, tried and convicted in the Criminal Court of Baltimore City for the larceny of a watch and chain, and later paroled. The Court overruled an objection to the question and the witness answered "Yes." This exception is not discussed in appellant's brief, and was not referred to by its counsel in the argument, and we might assume that it is abandoned. There can, however, upon authority be no doubt that the ruling was correct. *Smith* v. *State,* 64 Md. 25; *McLaughlin* v. *Mencke,* 80 Md. 86; *Matlingly* v. *Montgomery,* 106 Md. 461, and other cases.

We have carefully examined the record, and while it presents some unusual circumstances, we do not find any error of law committed by the lower Court, and, therefore, the judgment will be affirmed.

*Judgment affirmed, with costs.*