## LACHMAN v. PENNSYLVANIA GREYHOUND LINES, Inc.

### No. 5546.

Circuit Court of Appeals, Fourth Circuit.

March 12, 1947.

Louis B. Fine, of Norfolk, Va., for appellant.

Leon T. Seawell, of Norfolk, Va., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a civil action originally instituted in the Court of Law and Chancery of the City of Norfolk, Virginia, by Mary Lachman, plaintiff and appellant, against Pennsylvania Greyhound Lines, Incorporated, defendant and appellee (hereinafter referred to as Greyhound), for personal injuries sustained by plaintiff while she was a passenger on a Greyhound bus en route from New York to Norfolk. Greyhound had the cause removed to the United States District Court for the Eastern District of Virginia and from a judgment in that court adverse to her, Lachman has appealed.

The questions before us are the applicability of the doctrines of sudden emergency and res ipsa loquitur. The lower court gave instructions that denied to Lachman any benefit that could have been derived from the doctrine of res ipsa loquitur and made available to Greyhound a possible defense based on a finding of sudden emergency. Error is alleged by Lachman as to both instructions.

The accident occurred on October 14, 1944, at four-thirty A.M., on U. S. Route No. 13, in the State of Maryland, fourteen miles South of Salisbury. It appears that there is a curve at that point on the road which forms a flat and gradual turn to the left, or East, when a vehicle is proceeding, as was the bus here, to the South. This section of the highway is 22 feet wide, with shoulders extending two feet on each side. That part of the road leading to the curve is of concrete construction, whereas the curve itself, or parts of it, are made with macadam. The road was wet, as it had been raining during the night in question, and visibility was limited because of the mist.

The testimony concerning many of the important facts surrounding the accident was contradictory. Lachman related that the bus was going "very fast * * * around sixty miles an hour." Opposed to this was the statement of the Greyhound driver that he was going "thirty and thirty-five miles per hour." The driver emphatically denied statements attributed to him by Lachman that he had a limited time in which to catch the Cape Charles ferry, and that he had requested a passenger sitting behind him to keep talking so that he wouldn't go to sleep. There were conflicting expressions as to the care with which the vehicle was being driven and the amount of rain and mist prior to, and at the moment of, the accident. Lachman testified that she saw the bus headed for a certain crash into a telephone pole, that she screamed and then knew nothing more until she regained consciousness in a Salisbury hospital.

The Greyhound driver testified (and there was no substantial conflict as to this) that he approached the curve aware of a "curve or an incline or something" as "I could vision it with my lights." He stated that his lights and windshield wiper were working properly and he was able to see for more than 200 feet ahead when the bus skidded slightly. The driver attributed the skid to the different coefficient of friction encountered by the bus in traveling from the "cement" (concrete) to the "tarred" (macadam) surface of the highway. Realizing that he was in skid, he took his foot off the accelerator and, without applying the brake, attempted to guide the bus back onto the road. The skid continued and when a crash into a telephone pole appeared inevitable, he managed to guide the bus in the general direction of the skid to an opening between the pole and a tree which took the bus into a plowed field. The bus slid sharply in the mud, turned around and over on its side, coming to rest in the field a few feet from the road. As the bus went over, Lachman was injured.

The court properly instructed the jury as to the high degree of care which the law demands of a common carrier, although this instruction was preceded by an instruction that " * * * you cannot infer negligence * * * from the mere happening of an accident, or from the mere fact that the bus in which the plaintiff was riding skidded upon the highway." To this Lachman duly excepted.

The Court went on to instruct the jury that:

"You are told further that if you believe from the evidence that the driver of the bus, at the time of the accident or immediately preceding it, was placed in a position of sudden emergency requiring immediate action on his part to try to avoid the accident, and that such emergency was not caused by the negligence of the driver, then the same amount of care was not required of the driver under such circumstances of sudden emergency as is required otherwise, because the law recognizes that under such circumstances (that is, circumstances of a sudden emergency) the minds and muscles of men do not act instantaneously, and the law makes allowance for errors of judgment. What was required of the driver at the time was that he act with the highest degree of care practicable, which I have just mentioned, under all the circumstances existing, but bearing in mind that if he was confronted with a sudden emergency, you must recognize that definition of the care with which he was chargeable by the principle that the law recognizes that in such emergency some allowance for errors of judgment must be made."

Lachman also excepted to this instruction, both as to applicability and, if applica-

ble, to the correctness of the law expressed therein. These two phases of the doctrine of sudden emergency are treated as one by counsel and will be so treated here.

We have, therefore, only two questions before us: (1) Whether the facts stated constitute a proper case for an instruction encompassing the doctrine of res ipsa loquitur; and (2) Whether the doctrine of sudden emergency is applicable and, if so, whether this doctrine was correctly stated. Greyhound contends that since skidding is not negligence, per se, the doctrine of res ipsa loquitur could not apply in any event. Although in this respect the questions may not be of equal dignity, we will take them up in the order presented.

■ Question has arisen as to whether the applicability of the doctrine of res ipsa loquitur is to be determined by the law as laid down in the federal courts, by the law of Virginia where the case was tried in the federal court, or by the law of Maryland where the cause of action arose. Ordinarily, of course, questions of procedure in the federal courts are governed by the federal rules and by federal decisions interpreting and supplementing them, and questions of substantive law by the rules prevailing in the courts of the several states under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 A.L.R. 1188, 114 A.L.R. 1487. The line between substance and procedure is not so clearly marked as to be free from doubt in all cases, and the decisions have been influenced by the desire to effectuate the spirit of the doctrine of Erie R. Co. v. Tompkins so as to secure uniformity in the results to be obtained in the state courts and in the federal courts in diversity cases in each state. This is especially desirable when the remedial law of the state is so closely associated and incorporated with its substantive law as to be necessary in order to maintain and validate the latter. Precourt v. Driscoll, 85 N.H. 280, 157 A. 525, 78 A.L.R. 874. Thus it has been held that the federal courts must follow the law of the state as to the burden of proof in certain classes of cases. Cities Service Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L. Ed. 196; Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719; and as to conflict of laws Griffin v.

McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L. Ed. 1481, 134 A.L.R. 1462; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; and as to state statutes of limitation in equity cases, Guaranty Trust Co. v. York, 326 U.S. 99, 65 S. Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231. See also dissenting opinion of Mr. Justice Reed in Angel v. Bullington, 67 S.Ct. 657.

In Central Vermont R. Co. v. White, 238 U.S. 507, 511, 512, 35 S.Ct. 865, 867, 59 L. Ed. 1433, Ann.Cas.1916B, 252, which dealt with the question as to whether or not burden of proof as to contributory negligence was a matter governed by the procedure of the state of the forum, the Supreme Court said:

"So, too, as to the burden of proof. As long as the question involves a mere matter of procedure as to the time when and the order in which evidence should be submitted the state court can, in those and similar instances, follow their own practice even in the trial of suits arising under the Federal law.

"But it is a misnomer to say that the question as to the burden of proof as to contributory negligence is a mere matter of state procedure. For, in Vermont, and in a few other states, proof of plaintiff's freedom from fault is a part of the very substance of his case. He must not only satisfy the jury (1) that he was injured by the negligence of the defendant, but he must go further, and, as a condition of right to recover, must also show (2) that he was not guilty of contributory negligence. In those states the plaintiff is as much under the necessity of proving one of these facts as the other; and as to neither can it be said that the burden is imposed by a rule of procedure, since it arises out of the general obligation imposed upon every plaintiff, to establish all of the facts necessary to make out his cause of action."

■ The rule of res ipsa loquitur is not a rule relating to the burden of proof and its application does not result in shifting the burden of proof. Sweeney v. Erving, 228 U.S. 233, 238, 33 S.Ct. 416, 57 L. Ed. 815, Ann.Cas.1914D, 905, and following notes: Ann.Cas.1914D, 908, 16 L.R.A.,N. S., 527, L.R.A.1916A, 930, 42 A.L.R. 865, 59 A.L.R. 486. It does, however, relate to

the "general obligation, imposed upon every plaintiff, to establish all of the facts necessary to make out his cause of action"; and if "proof of plaintiff's freedom from fault is a part of the very substance of his case," on the same principle, it must be held a matter of substance that proof of the occurrence of injury will or will not justify a finding of liability on the ground of negligence. It would seem, therefore, that we must look to the law of the State in order to determine whether the doctrine of res ipsa loquitur should be applied in the pending case. Where a cause of action arises in one state and the action is brought in another state, a question of conflict of laws arises, and upon such a question, as we have seen, the federal court in a diversity case follows the law of the state in which it sits. It thus seems clear that plaintiff's substantive rights in the instant case will be governed by the law of Maryland, since it is well settled in Virginia that liability for tort depends upon the law of the place of injury. C. I. T. Corporation v. Guy, 170 Va. 16, 195 S.E. 659; Sutton v. Bland, 166 Va. 132, 184 S.E. 231.

█ Though there is some ambiguity in the Maryland cases, we think the law of Maryland requires the submission of the instant case to the jury under the res ipsa loquitur rule. United Railways & Electric Co. of Baltimore v. Phillips, 129 Md. 328, 99 A. 355, L.R.A.1917C, 384, was a negligence suit by a passenger against a carrier. Although res ipsa loquitur, as such, is not mentioned, its use in a case such as the one before us was approved. In that case a street railway car lurched suddenly as it started, threw the plaintiff violently to the floor and injured her. The lower court told the jury that from the sudden and unusual lurch, it might infer negligence on the part of the defendant. In affirming a judgment for the plaintiff, the appellate court stated that such an unusually severe jerk was sufficient to raise a "presumption of negligence on the part of the defendant."

█ A more recent Maryland case makes it clear that res ipsa loquitur, when applicable, gives rise to an inference of the defendant's negligence. Potts v. Armour & Co., 183 Md. 483, 39 A.2d 552. This holding is consistent with the rule laid down long ago in the federal courts in the celebrated case of Sweeney v. Erving, 228 U.S. 233, at page 249, 33 S.Ct. 416, at page 418, 57 L.Ed. 815, Ann.Cas.1914D, 905, where it is said:

"Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

The latest expression from the United States Supreme Court on this subject can be found in the recent case of Jesionowski v. Boston & Maine R. R., 67 S.Ct. 401, where the doctrine of Sweeney v. Erving, supra, is cited with approval.

We think this is a proper case for an instruction as to res ipsa loquitur and that the lower court erred in its instruction that no inference of negligence could be drawn from the happening of the accident. United Railway & Electric Co. v. Phillips, supra; Sweeney v. Erving, supra. Res ipsa loquitur was conceived, not in the field of mere abstract thought, with which it has since been tortured, but rather in the bedrock of human experience and everyday common sense. The cases (quite properly, we think) indicate a clear tendency to apply the res ipsa loquitur rules to railroad trains operating on a fixed track more frequently than to busses operating on a public highway. Yet in a proper case, the rule should be invoked as to the bus.

█ We conclude, therefore, that the instruction as to res ipsa loquitur should have been given in the instant case. The jury should have been told that if it found that the instrumentality was under the exclusive control of the defendant and also that the accident was one of such a nature that it does not ordinarily arise save from de-

fendant's lack of proper care, then there was a presumption (calling for an explanation by the defendant), that the injury was due to the defendant's negligence. And we are not impressed by Greyhound's contention, under the evidence in the instant case, that the skidding of the bus was an intervening cause which prevents the application of res ipsa loquitur.

In Shain, Res Ipsa Loquitur, Presumptions and Burden of Proof, at page 464, it is stated:

"In other words, the happening of an automobile accident is not so unusual as to give rise to the inference that it happened due to someone's negligence. Just when an accident is unusual enough to give rise to such an inference depends on the particular facts of each case."

The doctrine of res ipsa loquitur was applied in the following cases: Mackenzie v. Oakley, 94 N.J.L. 66, 108 A. 771 (car suddenly skidded from no apparent cause and an accident resulted); Rosenberg v. American Railway Express Co., Sup., 198 N.Y.S. 224 (heavy truck, stopping for a traffic signal, skidded on a wet pavement and crashed into a car); Ivins v. Jacob, D.C., 245 F. 892 (car ran upon a sidewalk, injuring a pedestrian); Queirolo v. Pacific Gas & Electric Co., 114 Cal.App. 610, 300 P. 487 (truck swerved, left the highway and overturned); Morris v. Morris, 84 Cal.App. 599, 258 P. 616 (car left the road and ran into a telephone pole); Bryne v. Great Atlantic & Pacific Tea Co., 269 Mass. 130, 168 N.E. 540 (car collided with a large stationary excavator).

Complaint is made of the charge on the doctrine of emergency on the ground that the doctrine is not applicable to the facts of the case and that it is not properly stated in the charge. We are not prepared to say that a proper charge on emergency should not have been given. Section 296 of the Restatement of the Law of Torts provides:

"Section 296. Emergency. In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is a factor in determining the reasonable character of his choice of action."

But as this quotation indicates, the doctrine has no application to an emergency arising out of the negligence of the person invoking it, see 5 Am.Jur. p. 601, 38 Am. Jur. 688 and cases cited; and while the learned judge did charge that the emergency rule was not applicable if it was caused by the negligence of the driver, he did not discuss this abstract statement in connection with the facts of the case and the charge as given was misleading and prejudicial to the plaintiff. The doctrine would have no application in the case at bar if the emergency was due to the failure of the driver to keep a proper lookout, or to his driving at an excessive rate of speed considering the weather and the condition of the road, or to his driving from a concrete to a tar surface without taking proper precaution, or from his attempting to drive a public conveyance over a highway with which he was not thoroughly familiar so as to be able to guard against dangers due to change of road surface. None of these matters were covered by the charge, which dealt with the subject of negligence only in general terms and introduced the subject by an instruction that negligence could not be inferred from the happening of the accident.

Furthermore, the driver of the bus was engaged in an occupation requiring special training and skill, and this should have been explained in connection with the charge on emergency, if a charge on that subject was given. The rule with regard thereto is stated in A. L. I. Restatement of Torts, Negligence, in paragraph 296(c) as follows:

"In determining whether the actor is to be excused for an error of judgment in a sudden emergency, importance is to be attached to the fact that many activities require that those engaged in them shall have such natural aptitude or special training, as to give them the ability to cope with those dangerous situations which are likely to arise in the course of such activities. Thus, a driver of a high speed interurban omnibus would not be reasonably competent to drive unless by constant training and practice he had become capable of al-

502

most automatic reaction to the numerous situations which are likely to arise and which, when they arise, require prompt and proper action."

We think, also, that the charge is erroneous in that it tells the jury that the same amount of care is not required in cases of sudden emergency as is required otherwise; whereas emergency does not lessen the obligation to use care, but merely excuses errors of judgment due to the excitement and necessity for haste produced by the emergency. The question.is always what the appropriate standard of care requires under the circumstances of the case; and the emergency is merely one of the circumstances of the case. 5 Am. Jur. 601 and cases cited. A charge that the same amount of care is not required under circumstances of emergency is likely to mislead the jury, even though the emergency doctrine is otherwise properly explained.

For the reasons stated, the judgment is reversed and the case is remanded for a new trial.

Reversed and remanded.