THE STATE v. PRATT, *Appellant.*

Division Two, May 8, 1894.

1. **Criminal Practice**: FORGERY: INSTRUCTION. An instruction on a trial for forgery that though "you may believe that the act of signing the name" to the deed with the felonious intent of forging it was done by someone other than the defendant, yet if you believe that defendant, knowing of the felonious purpose of such other person, was present aiding and abetting such act you must treat it as done by defendant, does not assume that the deed was so signed by some other person than the defendant.

2. ———: INSTRUCTIONS. Instructions should be read together and an omission in one may be supplied in another.

3. ———: ———. The failure to instruct that an indictment is but a formal charge against the defendant and furnishes no evidence of his guilt is not reversible error.

4. ———: ———: DEFENDANT AS WITNESS. It is proper on a trial of a criminal cause to instruct the jury "that defendant is a competent witness in his own behalf, but the fact that he is a witness testifying in his own behalf and the interest he has at stake in the cause, may be considered by the jury in determining the credibility of his testimony." (*State v. Maguire*, 113 Mo. 670.)

5. ———: CONSPIRACY: EVIDENCE. Where persons have entered into a conspiracy to forge a deed and then to obtain money by mortgaging the land and dividing the money among them, transactions by one conspirator between the execution of the deed and the accomplishment of the further purpose of the conspiracy are admissible in evidence against a co-conspirator on a prosecution for the forgery.

6. ———: INSTRUCTIONS. Evidence improperly and improvidently admitted may be excluded orally by the court and also by instructions, though the error is not always thereby cured.

7. ———: EVIDENCE: OPINION OF WITNESS. A question to a notary on a trial for forgery as to whether defendant in making an acknowledgment of a deed acted in a fair, straightforward way is properly excluded as opinion evidence.

8. ———: ———. Error in the exclusion of evidence is cured by its subsequent admission.

9. ———: ———: DISCREDITING WITNESS. A witness, for the purpose of discrediting him, may be asked if he has not been in jail for stealing.

10. ———: ———: ———. So it may be asked him if he had not been in jail for assaulting and beating a woman.

*Appeal from Jackson Criminal Court.*—HON. JOHN W. WOFFORD, Judge.

AFFIRMED.

*Karnes, Holmes & Krauthoff* for appellant.

(1) It is well settled that what is said and done by a conspirator after the crime is committed and not in the presence of the other is not admissible in evidence against one not making the statements or admissions. *State v. Minton*, 116 Mo. 605; *State v. Hildebrand*, 105 Mo. 318; *State v. Melrose*, 98 Mo. 594. (2) In criminal cases the admission of improper testimony is not cured by an instruction excluding it. *State v. Thomas*, 99 Mo. 235; *State v. Daubert*, 42 Mo. 242; *State v. Rothschild*, 68 Mo. 52; *State v. Mix*, 15 Mo. 153; *State v. Wolf*, 15 Mo. 168; *State v. Blan*, 69 Mo. 317. (3) The seventh instruction given for the state improperly assumes the felonious intent. *State v. Wheeler*, 79 Mo. 366; *State v. Hayes*, 105 Mo. 76. (4) The second instruction asked by defendant to the effect that the finding of the indictment raised no presumption against the defendant, should have been given. *State v. Brown*, 115 Mo. 409. (5) The fifth instruction given for the state, which told the jury that in determining the

weight and credibility they would give to the testimony of defendant they might take into consideration as affecting his credibility his interest in the result of the case, and that he was the accused party on trial, testifying in his own behalf, was erroneous. *Hicks v. U. S.*, 150 U. S. 442. (6) It is competent for the defendant to testify as to the intent with which an act was done where such intent is material. *State v. Williams*, 95 Mo. 247. (7) The general rule as to affecting the credibility of a witness is that "evidence as to specific acts is held inadmissible." *State v. Grant*, 79 Mo. 113; *State v. Taylor*, 98 Mo. 240. The conviction of a witness of a felony may be shown as affecting his credibility. *State v. Kelsoe*, 76 Mo. 505; *State v. Nelson*, 98 Mo. 414. But this is not so of one who has been convicted "of a mere misdemeanor or the violation of a city ordinance." *State v. Taylor*, 98 Mo. 240.

*R. F. Walker*, Attorney General, *Morton Jourdan*, Assistant Attorney General, and *Marcy K. Brown*, Prosecuting Attorney, for the state.

(1) The indictment is sufficient, being a literal copy of the form approved by this court in *State v. Fisher*, 65 Mo. 437; 4 Park. Cr. Rep. 217; *State v. Stewart*, 90 Mo. 511. (2) The evidence of Cottrell, who was jointly indicted with appellant, was perfectly competent and properly admissible; the court had directed that Cottrell be discharged in order that he might be a witness for the state; this was done, not only before appellant had gone into his defense, but before the trial of defendant had begun. R. S. 1889, sec. 4217. (3) Instruction number 7 for the state, when read in connection with number 9, is not erroneous. (4) No error was committed in giving the stereotyped instruction as to the weight to be given to defendant's testimony.

*State v. Maguire*, 113 Mo. 670.   (5) The general rule is not, as counsel stated, that "evidence as to specific acts is inadmissible;" but, on the contrary, the rule in this state now is that evidence as to specific acts is admissible, and this court so held in the celebrated case of *State v. Taylor*, 24 S. W. Rep. 445.  (6) The admission in evidence of the letters from Crab to Lesueur, and the conversation between these parties subsequent to the correspondence (in Kansas City), was not error. (7) But, conceding that the conspiracy did not exist, or had ended when the fraudulent deed was made and delivered, still there is no reversible error in the admission of the letters and the evidence as to the conversation between Lesueur and Crab.

SHERWOOD, J.—The defendant, Charles C. Pratt, was jointly indicted with George W. Dawson, J. H. Cottrell, and Jacob H. Crab, being charged with the crime of forging the name of Wayne S. Bishop to a deed purporting to transfer a farm in Lafayette county, Missouri, worth some $15,000, to said Crab.   It is unnecessary to set forth the testimony as it is already set forth in all of its salient features in Crab's case decided at the present delivery in an opinion delivered by BURGESS, J.   Severances were granted the respective defendants, the trial of defendant resulting in his conviction of forgery in the first degree, his punishment being assessed at imprisonment in the penitentiary for the term of ten years.

The evidence in this case, if believed by the jury, was amply sufficient for the purpose of conviction, though much of it was that of Cottrell, an accomplice; but the jury was properly instructed on the value to be placed on such testimony and how it should be received etc., and, besides, there was much other corroborative testimony and a variety of circumstances *aliunde* the

accomplice's testimony, which tended strongly to support such testimony, as, for instance, the extreme poverty of the conspirators; the taking of an unsecured note from Crab for $2,050, and a deed for three thousand acres of wild and worthless Kentucky land which he did not pretend to own, and which was made out in blank and which he had obtained the night before from Tobie, being given in exchange for the true Bishop's valuable farm; the only additional consideration being a contract between Crab and Cottrell, *alias* Bishop, for $300, signed by Crab, and purporting to be signed by Bishop. This contract was drawn up by Pratt, but did not describe the Kentucky land, which was to be exchanged for Bishop's farm, nor was the note for $2,050 secured on that farm; but it was to "be due on or before thirty days from the completion of this Traid, Which is to give time that a lone can be made on said farm, so as to pay note."

Though this contract called for only $300 in cash to be paid, yet even the payment of this small sum in so large a trade was waived by the obliging Bishop, though he did not have money enough to pay the notary. This contract was left with Thompson by Crab. After the parties had thus exchanged deeds, they separated without appointing time and place for another meeting, and leaving Crab in possession of a deed to a valuable farm, without any security that the Kentucky land was worth a cent, and without anything to prevent Crab, a stranger, whose address was unknown, from selling or incumbering it for any amount he pleased. This transaction, so out of the way of ordinary business usages, was enough of itself to excite the apprehensions of Pratt, if indeed he was a real estate agent and innocent of intent to defraud.

Several errors have been assigned why the judgment should be reversed, and first as to the instruc-

tions. It is unnecessary to notice the most of them as they are in usual form, and require no further notice.

I.   The seventh instruction given on the part of the state is the following: "Although you may believe that the act of signing the name of Wayne S. Bishop to the deed in evidence with the felonious intent of forging said name to said deed was in fact done by some person other than the defendant, C. C. Pratt; yet if you shall further believe that the defendant, C. C. Pratt, knowing of such felonious purpose on the part of such other person, was present at the time, knowingly or intentionally aiding, abetting, assisting, counseling or advising in the doing of such act, you must treat such act as done and performed by said C. C. Pratt himself."

It is insisted this instruction is erroneous, and it is said that it assumes "that the act of signing the name of Wayne S. Bishop to the deed in evidence, with the felonious intent of forging said deed was in fact done by some person other than the defendant." In our view the instruction makes no such assumption. Everything is made to depend on the *belief* of the jury.

As to the instruction failing to declare that the act should have been done with a felonious intent to defraud, this is immaterial, since such seeming lack is supplied by instruction 9 given for the state in which such an intent on the part of defendant to defraud is required. Reading these instructions together, as always should be done, leaves nothing wanting. The eighth instruction in *Crab's case* was just such an instruction, and we approved it.

II.   Although it would not have been improper to have instructed the jury that the indictment was but a formal charge against defendant, and furnished no evidence of his guilt, yet in *State v. Brown*, 115 Mo. 414,

we held that the failure to give such an instruction would not be reversible error.

III.    Relative to the fifth instruction given . on behalf of the state with respect to the credibility to be accorded to defendant's testimony, it is sufficient to point to the ruling of this court in *State v. Maguire*, 113 Mo. 670.

IV.    The deed in this case, forged in the name of Bishop by Cottrell and his associates, was executed on the ninth day of June, 1893.    It is claimed upon this ground that any subsequent transactions regarding the land trade, letters to and from Lesueur, etc., were inadmissible against defendant, because he was not shown to have been a participant. in such subsequent transactions.    No rule of law is better settled than that a conspiracy being shown and that ' conspiracy ended, no word of any one of the conspirators can be received as incriminating evidence against any one or more of the others.    This rule, however, only applies where the words are merely narrative of a past transaction; it does not apply where the transaction, the criminal design, is still pending and unaccomplished.

Sometimes it is a nice and difficult question to determine when any criminal design has terminated. In this case, however, no difficulty arises, because the aim and object of the conspirators evidently was to so use the land, as to which they had acquired a fictitious title, as to divide the proceeds of their ill-gotten gains among themselves, and, until this was done, the design was still inchoate and pending, and as shown by the evidence the conspirators were willing to forge another deed if necessary in order to make their unlawful gains secure.

As illustrating this point, it has been ruled that, if two conspired to steal a watch and then to divide its proceeds between them, what one said and did between

the stealing and the dividing was good evidence against both. *Scott v. State*, 30 Ala. 503. See, also, 2 Bishop's Crim. Proc., sec. 230, and cases cited. And often, in such circumstances, when the subsequent statement or declaration of a co-conspirator is thus a part of the *res gestæ*, explanatory and illustrative of the transaction, it is not inadmissible, though it may refer to a past event as the true reason of the present conduct. *Stewart v. Hanson*, 35 Me. 509; *Clinton v. Estes*, 20 Ark. 216.

On this ground we hold that the evidence in question was clearly admissible; this being the case, the action of the trial court in instructing the jury out of abundant caution to exclude from their consideration such evidence of subsequent transactions can not be regarded as erroneous, only as against the state.

In this connection it may be remarked that at the present delivery, we have held that when evidence has been improperly and improvidently admitted, the trial court is justified in orally excluding it on the instant, or limiting its effect to one defendant, and afterwards repeating the exclusion or limitation by written instructions. *State v. Nocton, ante,* p. 537.

Instances, of course, may arise where evidence is so highly prejudicial as that even an instruction to exclude it will not cure the inadvertent error of its admission; but such cases will be rare; the circumstances of their occurrence can not be formulated into a rule by anticipatory utterances; each case must rest and be determined on its own basis of facts.

V. The notary who drew the deed from the supposed Bishop to Crab and took the acknowledgment thereto, was asked if there was anything in the Kentucky land matter to throw suspicion on the transaction in any way, etc. The answer to this question was properly prevented. Had the court permitted the notary to answer the question, such answer would have

usurped the province of the jury, whose province it was to determine all those matters. The same considerations apply to the question asked the notary whether defendant approached him in any way that indicated he wanted anything but fair, straight work, etc.

VI. Though the court refused to let Thompson answer the question whether parties in Kansas City handle deeds made out in blank as to the grantee, yet this error, if error it was, was cured by allowing defendant to answer the same question. *State v. Sansone*, 116 Mo. 1; *State v. Green*, 37 Mo. *loc. cit.* 468; *Deer v. State*, 14 Mo. 348.

VII. It seems that Dawson, one of the conspirators, had been corresponding with Lesueur under the name of J. K. Whalen, and Dawson had introduced himself to defendant, as testified to by the latter, as J. K. Whalen, and showed defendant letters addressed to Whalen by Lesueur in reference to the land matter. On this basis, the question was asked McCormick, a real estate agent, whether a man by the name of Whalen had called at his office, the object of the question, as stated, being to show that there was such a man as Whalen in Kansas City. This statement being the sheerest hearsay, was properly excluded. Thereupon the court remarked, "Bring Whalen in, and that will settle it." This remark was somewhat petulant, and doubtless improper, but certainly it does not constitute reversible error.

VIII. Under the rulings in *State v. Miller*, 100 Mo. 606; 13 S. W. Rep. 832; *State v. Taylor*, 118 Mo. 153, it was competent to ask the witness if he had been arrested and put in jail in Kansas City for stealing a pitchfork.

IX. As to the witness Garrett, the substance of the impeaching questions, for there were several, was to the effect if he was not put in jail for six months

"for assaulting a poor woman on the street car and beating her up." This charge, under objection, the witness admitted. We see no reason to rule differently in this paragraph to what was done in the one next preceding.

We have thus reviewed the errors assigned and finding no substantial error in the record affirm the judgment. All concur.