## LANG et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. October 11, 1904.)

No. 1,064.

1. IMMIGRATION LAWS—PROSECUTIONS FOR VIOLATION—SAVING CLAUSE IN AMENDATORY ACT.

The provision of section 28 of the immigration act of March 3, 1903 (32 Stat. 1220, c. 1012 [U. S. Comp. St. Supp. 1903, p. 183]), that "nothing contained in this act shall affect any prosecution or other proceeding, criminal or civil, begun under any existing act or any acts hereby amended, but such prosecution and other proceedings, criminal or civil, shall proceed as if this act had not been passed," is not limited in its application to prosecutions or proceedings which had been "begun" before the passage of the act, but applies to those thereafter begun under the old law, based on acts committed before its repeal or amendment.

2. CRIMINAL LAW—FEDERAL PROSECUTIONS—RULES OF EVIDENCE.

Questions relating to the admissibility of evidence in criminal prosecutions based on violations of the statutes of the United States are governed wholly by the general rules of law applicable to the conduct of trials, and not by the statutes or decisions of the particular state in which the court is sitting, except so far as the same may be persuasive.

3. SAME—IMPEACHMENT OF DEFENDANT AS WITNESS—FORMER IMPRISONMENT.

It is within the discretion of a trial court to permit a defendant in a criminal case, when on the stand as a witness, to be asked on cross-examination if he has not been confined in a state prison.

Jenkins, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Northern District of Illinois.

The plaintiffs in error were found guilty, December 8th, 1903, in the United States District Court, for the Northern District of Illinois, of violating section three of the act of March 3, 1875, c. 141, 18 Stat. 477 [U. S. Comp. St. 1901, p. 1286], which reads as follows:

"Sec. 3. That the importation into the United States of women for the purposes of prostitution is hereby forbidden and all contracts and agreements in relation thereto, made in advance or in pursuance of such illegal importation

---

¶ 2. See Courts, vol. 13, Cent. Dig. § 908.

and purposes, are hereby declared void; and whoever shall knowingly and willfully import or cause any importation of women into the United States for the purposes of prostitution, or shall knowingly or willfully hold, or attempt to hold, any woman to such purpose, in pursuance of such illegal importation and contract or agreement, shall be deemed guilty of a felony, and on conviction thereof, shall be imprisoned not exceeding five years and pay a fine not exceeding $5,000."

On March 3, 1903, the above section was repealed and superseded by the following section:

"Sec. 3. That the importation into the United States of any woman or *girl* for the purposes of prostitution is hereby forbidden; and whoever shall import or *attempt to import* any woman or *girl* into the United States for the purposes of prostitution, or shall hold or attempt to hold, any woman or *girl* for such purposes in pursuance of such illegal importation shall be deemed guilty of a felony and, on conviction thereof, shall be imprisoned not less than one nor more than five years and pay a fine not exceeding $5,000." 32 Stat. 1214, c. 1012 [U. S. Comp. St. Supp. 1903, p. 172].

"Sec. 28. That nothing contained in this Act shall affect any prosecution or other proceeding, criminal or civil, begun under any existing Act or any Acts hereby amended, but such prosecutions and other proceedings, criminal or civil, shall proceed as if this act had not been passed." 32 Stat. 1220, c. 1012 [U. S. Comp. St. Supp. 1903, p. 183].

Both were sentenced to the penitentiary at hard labor, Lang for the period of three years, and Lewis for the period of two years, and each to pay a fine of one hundred dollars and costs of suit. The petition in error is to reverse these judgments.

The assignment of errors is predicated, First on the court's refusal, at the close of the evidence, to instruct the jury to find the plaintiffs in error not guilty; Second, the admission of evidence on cross-examination of plaintiff in error Lang, bringing out the fact that defendant was at one time in the penitentiary at Trenton, New Jersey; the cross-examination on that subject, being as follows:

Mr. Bethea: Q. What were you doing at Trenton? A. I refuse to answer.

Q. Why do you refuse? A. I have got ground to refuse.

Q. Trenton, New Jersey, has a penitentiary, has it not?

Mr. Bachrach: I object on the ground that if the Government intends to try to prove a conviction for an infamous offense, the record of conviction would be the best evidence.

Mr. Bethea: We will prove it at the proper time. We have a right to show where this man was.

Mr. Bachrach: I object to it. They have no right to bring out indirectly what they cannot do directly.

The Court: He has a right to require the personal history of the witness, within the discretion of the Court.

Mr. Bachrach: But when it becomes perfectly apparent from what he states here, that the penitentiary is there at Trenton, that he wants the witness to admit that he has been in the penitentiary without proving such a conviction, that is one of the things that he must prove by the record.

The Court: Do you contend that he may not ask that question straight out?

M. Bachrach: Whether he has been in the penitentiary?

The Court: Yes.

Mr. Bachrach: Indeed I do. He has no right to ask that question. He may ask him if he has been convicted of a felony or infamous crime, but has no right to ask a man if he has been in the penitentiary.

Mr. Bethea: I have a right to show where he has been living all the time.

The Court: The objection will be sustained to that question.

Mr. Bethea: Q. How long were you in Trenton, New Jersey?

A. I can't remember exactly how long.

Q. Weren't you in the State Penitentiary during the time you were in Trenton, or most of it?

The Court: You may answer.

A. Yes, sir.

Mr. Bethea: Q. For what crime?

Objected to by the defendants, on the ground that the record of conviction of an infamous offense would be the best evidence. Which objection was overruled by the Court. To which ruling the defendants' counsel duly save an exception.

A. I had been tending bar in the saloon, and they claimed the house was an ill famed house.

Q. Weren't you convicted there of an infamous offense, the crime of importing prostitutes from a foreign country, the same crime as this? A. No, sir.

Q. Wasn't it for keeping a girl in a house of prostitution that was under age?

Objected to. Objection overruled.

A. No sir.

Mr. Bethea: What do you say the charge was?

Objected to upon the same ground,—that the record of conviction of an infamous offense would be the best evidence. Objection overruled by the Court. Defendants' counsel duly saved an exception.

A. The charge was for tending bar in a house of ill fame.

Third: In admitting testimony of correspondence by telegram and letter, between the agent of the Grand Trunk Railroad at Chicago, and the General Passenger Agent at Montreal; and Fourth: In entering judgment and sentencing the defendants upon a prosecution under a statute that had been repealed.

The further facts are stated in the opinion of the court.

Benjamin C. Bachrach, for plaintiffs in error.

S. H. Bethea, U. S. Dist. Atty.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above). The act of March 3rd, 1875, c. 141, 18 Stat. 477 [U. S. Comp. St. 1901, p. 1286], under which plaintiffs in error were indicted, was superseded by the act of March 3rd, 1903, the third section of which reads as follows:

"Sec. 3. That the importation into the United States of any woman or girl for the purposes of prostitution is hereby forbidden; and whoever shall import or attempt to import any woman or girl into the United States for the purposes of prostitution, or shall hold or attempt to hold, any woman or girl for such purposes in pursuance of such illegal importation shall be deemed guilty of a felony and, on conviction thereof, shall be imprisoned not less than one nor more than five years and pay a fine not exceeding $5,000" (32 Stat. 1214, c. 1012 [U. S. Comp. St. Supp. 1903, p. 172]).

The twenty-eighth section of the act reads as follows:

"Sec. 28. That nothing contained in this Act shall affect any prosecution or other proceeding, criminal or civil, begun under any existing Act or any Acts hereby amended, but such prosecutions and other proceedings, criminal or civil, shall proceed as if this act had not been passed" (32 Stat. 1220 [U. S. Comp. St. Supp. 1903, p. 183]);

and the thirty-sixth section reads as follows:

"That all acts and parts of acts, inconsistent with this act, are hereby repealed" (32 Stat. 1221 [U. S. Comp. St. Supp. 1903, p. 185]).

It may be doubted whether the third section of the act of 1903, re-enacting in an enlarged way the third section of the act of 1875—both sections being unaffected by any repealing clause except the one above quoted—constitutes a remission of all penalties for violations of the earlier section committed before the passage of the act of 1903. On that question, however, we express no opinion.

It will be observed that section twenty-eight of the act of 1903, provides "that nothing contained in this act shall affect any prosecution or other proceeding, criminal or civil, begun under any existing act or any acts hereby amended." The prosecution under review was commenced after the passage of that act. Counsel for plaintiffs in error would have us construe the twenty-eighth section as if it read that nothing contained in the acts should affect any prosecution or other proceeding, criminal or civil, already begun, under any existing act. To make good their point, they must convince us that the saving clause was intended to save only prosecutions then pending.

We do not thus interpret the saving clause. The word "begun" as here employed, is not the preterit of begin, expressing that verb in its past tense; it is, in our judgment, the past participle, performing solely the function of a connective—the verbal adjective, qualifying any prosecutions in mind, pending or future, its sole purpose being to show that such prosecution is one under the act of 1875.

It was not the purpose of Congress in the employment of the word "begun" in the connection here used, to provide that there should be no prosecutions under the old statute unless they had been already begun. Congress presumably, was looking to the future, as well as the past. It meant that in the matter of importations of this character, there should be no interim of non-criminality. The amendatory statute only enlarged and tightened the preceding statute. No prosecutions could be based on the amendatory statute for acts done prior to its enactment; what Congress meant in the section preserving the ꞏ ꞏ ꞏt to prosecute under the statute was, that no prosecutions begun under that statute, whether they were then pending, or should thereafter be brought, should lapse by reason of this effort to enlarge and tighten the hold of the government upon this class of importations. It is to carry out this purpose that the word "begun" is employed, merely as a connective to identify a prosecution pending or to be brought, with the statute under which it is brought.

. The other questions raised need little discussion. The verdict, in our judgment, is supported by sufficient evidence; the correspondence that passed between the agent at Chicago, and the agent at Montreal, was admissible as a part of the res gestæ—bearing on the fact of importation; and the cross-examination of Lang, as to his incarceration in the New Jersey penitentiary, was not carried beyond permissible limits.

Questions relating to the admissibility of evidence in criminal prosecutions, based on violations of the Statutes of the United States, are questions wholly within the general rules and law applicable to the conduct of trials, and not at all subject, except as state statutes or decisions may be persuasive, to the statutes or decisions prevailing in the particular state where the court happens to sit; otherwise each state would have a substantial part in determining the manner in which the courts of the United States should enforce, not the law of the state, but the national laws.

Chief Justice Cooley, in Clemens v. Conrad, 19 Mich. 170, laid down the rule covering the cross-examinations of witnesses in relation to their conviction and incarceration for crime, as follows:

"The right to inquire of a witness on cross-examination whether he has not been indicted and convicted of a criminal offense, we regard as settled in this state by the case of Wilbur v. Flood, 16 Mich. 40 [93 Am. Dec. 203]. It is true that in that case the question was, whether the witness had been confined in state prison; not whether he had been convicted; but confinement in a state prison pre-supposes a conviction by authority of law, and to justify the one inquiry and not the other would only be to uphold a technical and at the same time point out an easy mode of evading it without in the least obviating the reasons on which it rests. We think the reason for requiring record evidence of conviction has very little application to a case where the party convicted is himself upon the stand and is questioned concerning it, with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight, that it may almost be looked upon as purely imaginary, while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent. We prefer the early English rule on this subject. Priddle's Case, Leach, C. L. 382; King v. Edwards, 4 T. R. 440; and for the reasons which were stated in Wilbur v. Flood."

The rule thus stated is reenforced by Thompson on Trials, § 458; Greenleaf on Evidence [16th Ed.] 461; Notes to Taylor's Evidence, vol. 3, p. 978, and the cases there cited, and many other cases at hand.

We are content to adopt this rule. It has done the plaintiff in error, in the case under review, no injustice; and if, in its application to the particular circumstances of future cases, any injustice be done, a correction thereof will follow under the right of a court of review to set aside the abuse of discretion by the trial court.

BAKER, Circuit Judge (concurring). Joining in the judgment of affirmance, and agreeing in substance with the reasons just now announced, I desire to consider further only one feature of the case.

If I were to concede that the interpretation is incorrect which says that "prosecutions begun" is an elliptical expression, that the ellipsis might have been filled by intersetting "which have already been," or "which may hereafter be," or "which have already been and may hereafter be," and that, in the absence of an expressed choice by Congress between the narrower, it is fair for the courts to assume that the broader, which includes both, was intended; and if I were further to concede that it is right (the object of all interpretation being to ascertain the legislative will) to apply the common-law canon of construction, which gives to the repeal of a penal statute the effect of forgiving the unconvicted, to a situation where Congress did not say that "the importation of women for the purposes of prostitution" shall no longer be an offense, but declared that hereafter "to import or to attempt to import women, or girls, for the purposes of prostitution," shall be an offense, nevertheless I should be unable to agree to the prisoners' discharge.

Rev. St. § 13 [U. S. Comp. St. 1901, p. 6], enacted in 1871 (Act Feb. 25, 1871, c. 71, 16 Stat. 432), provides that:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide; and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

Of course, one legislative body cannot tie the hands of its successors with respect to either subject-matter or method of subsequent legislation. But section 13, as I view it, evinces no such attempt. The Congress of 1871 was not addressing itself particularly to succeeding Congresses, but particularly to the courts. The courts are commanded by section 13 to treat a repealed statute as still remaining in force for punishment of violations thereof unless the courts shall find that the repealing act "expressly provides" that such repealed act shall not sustain any prosecution for its violation. The case of United States v. Reisinger, 128 U. S. 398, 9 Sup. Ct. 99, 32 L. Ed. 480, readily distinguishable from the present case in its facts, is useful here only as showing the Supreme Court's recognition (1) of what the common-law rule of construction was; (2) of the right of Congress to legislate upon the subject-matter of rules of construction; and (3) of the fact that Congress by the enactment of section 13 abrogated the common-law canon of interpretation, hereinabove stated, respecting the effect of a repeal.

If section 13 is in force in its entirety, it is the court's duty to apply the rule of interpretation therein laid down, and to treat the penal statute of 1875 as being alive for the purpose of sustaining every proper prosecution for the enforcement of its penalties, unless the amendatory and enlarging act of 1903 be found to contain an express provision for the forgiveness of the unconvicted. There is no pretense that the act of 1903 expressly so provides.

If section 13 is in force in its entirety, an argument along this line: The act of 1875 was superseded by the act of 1903; the effect of the supersession was to exempt all unconvicted violators of the act of 1875 from punishment unless Congress has provided for their prosecution; Congress in the act of 1903 has only provided that unconvicted violators against whom prosecutions were begun before March 3, 1903, may be punished; therefore unconvicted violators against whom prosecutions were begun after March 3, 1903, shall go free—is false, I think, because its keystone is the abrogated common-law rule of construction.

Has section 13 been repealed in whole or in part? That section furnished a complete enactment respecting one method of interpretation. Subsequent Congresses were left at liberty to legislate on that subject, as on every other within their constitutional right, and in any manner they might choose. They could amend or repeal the previous legislation. They could repeal it expressly or by implication, in whole or in part. No claim is made of an express repeal. No claim is made of a general repeal by implication. An argument is advanced, as I understand it, that section 13, has been partially repealed by implication (but only in its relation to the penal acts of 1875 and 1903) in this way: Section 13, in its application to the acts in question, provides that unconvicted violators of the act of 1875, against whom prosecutions were begun before March 3, 1903, may be punished, and also that unconvicted violators of the act of 1875 against whom prosecutions were begun since March 3, 1903, may be punished; the act of 1903 provides that unconvicted violators of the act of 1875 against whom prosecutions were begun before March 3, 1903, may be punished, but is silent respecting the fate of those unconvicted violators of the act

of 1875 against whom prosecutions had not been begun by March 3, 1903; therefore that part of the general law embodied in section 13 which by its terms would be applicable to the unconvicted violators of the act of 1875 against whom indictments were returned after March 3, 1903, has been impliedly repealed. And the maxim, "Expressio unius est exclusio alterius," is invoked as clinching the argument. It strikes me as a queer doctrine that silence should accomplish a repeal. It seems to me that, instead of adverting to the maxim quoted, which may properly be applied where one must choose between alternatives, attention should be given to those principles which declare that repeals by implication are not favored, that new legislation does not supersede the old by implication unless the new covers the whole subject of the old, and that the new may reaffirm (though reaffirmation is a needless work), amend, or supplant parts of the old without affecting the force and validity of those parts concerning which the new is silent. It is a forced and perverted interpretation, I think, which attributes to the Congress of 1903 the deliberate intention to pardon these offenders.

JENKINS, Circuit Judge (dissenting). The statute of the United States passed in 1871 (Rev. St. § 13 [U. S. Comp. St. 1901, p. 6]); provides:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

This, without doubt, prescribes a rule of construction to be applied to every subsequent act, in the absence of an expression of a different intent in such subsequent act. United States v. Reisinger, 128 U. S. 398, 9 Sup. Ct. 99, 32 L. Ed. 480. But as one Legislature cannot bind a subsequent Legislature to a particular mode of repeal, where the subsequent act contains a provision with reference to a prior act superseded by the new act, we must apply the recognized canons of construction to the language employed to ascertain the intent of the Congress.

By the act of March 3, 1903, c. 1012, 32 Stat. 1214 [U. S. Comp. St. Supp. 1903, p. 172], the act of March 3, 1875, c. 141, 18 Stat. 477 [U. S. Comp. St. 1901, p. 1286], was undoubtedly repealed or superseded, and was no longer operative (U. S. v. Tynen, 78 U. S. 92, 20 L. Ed. 153; 32 Stat. 1221, § 36 [U. S. Comp. St. Supp. 1903, p. 185]), unless it remained in force for the purposes of prosecution for penalties incurred for violation of it by virtue of section 13 of the Revised Statutes. The new act, by section 28 (32 Stat. 1220 [U. S. Comp. St. Supp. 1903, p. 183]), provided:

"That nothing contained in this act shall affect any prosecution or other proceeding, criminal or civil, begun under any existing act, or any acts hereby amended, but such prosecution and other proceeding, criminal or civil, shall proceed as if this act had not been passed."

What did the Congress mean by this provision? If nothing had been said, the old statute might have remained operative for the purpose of punishment of infraction of it, but the present act says that

it shall remain in force for the purposes of prosecutions, or other proceedings, begun under the act superseded. It limits the life of the superseded act to criminal or civil proceedings begun under that act; and so limited, under recognized canons of construction, it is clear that the Congress did not intend to save prosecutions which had not then been begun. "Expressio unius est exclusio alterius." If it were designed to save prosecutions not begun for offenses committed under the superseded act, as well as proceedings then begun, there was no necessity of speaking to the subject at all, for the general statute (Rev. St. § 13 [U. S. Comp. St. 1901, p. 6]) would have saved all prosecutions.

We are compelled to assume that the Congress understood this. We are compelled to assume that they spoke to a purpose. The natural import of the language used, as with deference I think, can bear no other construction than that the Congress intended to say what it expressly said should be saved, and nothing else. It is not permitted to the court to say that the Congress spoke unadvisedly or unwisely, nor should violence be done to recognized rules of construction to avoid supposed mischievous results, or supposed careless legislation. "Ita lex scripta est." The law has so spoken. The courts should follow and obey. If injury results the responsibility is upon the Legislature, not upon the court.

The case of United States v. Reisinger, supra, is relied upon by the government to sustain this prosecution, but is readily distinguishable from the case in hand. There the proviso to the act is to the effect that the rights of parties "shall not be abridged or affected as to contracts in pending cases," but there was no proviso with reference to criminal prosecution for offenses committed under the repealed act. The Supreme Court ruled that the question whether the prosecution of offenses was saved was determined by general statute (Rev. St. § 13 [U. S. Comp. St. 1901, p. 6]), and because the Legislature had not spoken in the new act to the question of offenses committed under the old act evidenced clearly an intention that with respect to that subject the general statute should control. The act saved contracts in pending causes, because there was no general statute of construction which would save them, and rights would have been lost by the repeal except for the proviso. The court recognized the general rule that the repeal of a penal statute acts as a remission of all penalties for violations of it committed before its repeal, and a release from prosecution therefor after the repeal. The case of State v. Showers, 34 Kan. 269, 8 Pac. 474, is a case on all fours with the one in hand and contains an able, and, as I think, conclusive, argument in support of the position here assumed.

I fail to be impressed with the subtlety of grammar by which, as I think, the plain meaning of the language employed is distorted, and "prosecution begun" is held to mean a prosecution to be begun. Such interpretation does violence to that canon of construction which requires words of common use to be taken in their natural, plain, obvious, and ordinary significations, and imputes to the Congress a needless use of language, since, if it were designed to save prosecutions thereafter to be begun, it was unnecessary to speak to the subject at all, because, in the case of United States v. Reis-

inger, supra (decided 15 years before the present act, and with which we are bound to assume Congress was familiar), it was ruled that failure to speak to the question clearly indicated the intent that the general statute of construction (Rev. St. § 13 [U. S. Comp. St. 1901, p. 6]) should govern, and should be read into the act. That would result to save all prosecution under the former act, begun or to be begun. When, therefore, the Congress by the present act spoke to the subject, and saved prosecutions begun under the former act, the intent is clearly manifested to absolve for all offenses committed under the prior act, prosecutions for which had not then been begun.

The act for which the plaintiffs in error were convicted was done under the former act. No prosecution was commenced until after the enactment of the present statute. I think, therefore, that the prosecution cannot be maintained; and upon that ground I am constrained to dissent from the judgment of the court, without an expression of opinion upon the other questions considered.

The judgment will be affirmed.