## WILLIAMS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 22, 1924.)

No. 6624.

Witnesses ⬙345(1)—Witness may be asked on cross-examination whether he has been convicted of felony.

A witness may be asked on cross-examination, for the honest purpose of affecting credibility, whether he has been convicted of a felony, subject to such limitation as the sound discretion of the court may dictate to prevent abuse of the right, and the questioner is bound by the reply, unless the record of conviction is produced to refute the answer of the witness.

3 F.(2d)—9

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Criminal prosecution by the United States against Ike Williams. Judgment of conviction, and defendant brings error. Reversed and remanded, with instructions.

J. H. Hawthorne, of Jonesboro, Ark. (T. A. Turner and Hawthorne, Hawthorne & Wheatley, all of Jonesboro, Ark., on the brief), for plaintiff in error.

Charles F. Cole, of Batesville, Ark., for the United States.

Before STONE and KENYON, Circuit Judges, and KENNEDY, District Judge.

KENYON, Circuit Judge. Plaintiff in error was convicted in the United States District Court, Eastern District of Arkansas, upon one count of an indictment charging him with unlawfully carrying on the business of a wholesale liquor dealer without having first paid the special tax, as required by law, and was sentenced to the United States penitentiary at Atlanta, Ga., for a period of 18 months, and fined $1,000. Three questions are urged in argument:

First, misconduct of the district attorney. It is sufficient as to this to say that the alleged remark of the district attorney claimed to be prejudicial does not appear in the record. Hence that matter is not before the court.

Second, alleged error of the court in sustaining an objection to a question asked the witness, Sparks, as follows: "Mr. Sparks, have you been convicted of a felony?" Of this we speak later.

The third question is that urged by counsel that the evidence was insufficient to sustain the conviction. The indictment was under the old law, which was re-enacted by what is known as the Willis-Campbell Act, approved November 23, 1921. 42 Stat. 222, c. 134 (Comp. St. Ann. Supp. 1923, §§ 10138½aaa, 10138½bbb, 10138½ccc, 10138⅘a–10138⅘e). It is urged that the evidence does not show the offense was committed after that time.

The record fails to show that any contention was made in the trial court that the evidence was insufficient to carry the case to the jury. Outside of any other question, however, we think there is evidence from which a jury could find that the alleged business of plaintiff in error was carried on after the passage of the Act of November 23, 1921. Therefore this point is without merit.

We return, therefore, to the proposition presented as to the alleged error of the court in sustaining an objection to the question asked the witness Sparks as to whether he had been convicted of a felony. The court's theory of the matter is shown by its remark in sustaining the objection, "There is a way of bringing it in, by bringing a certified copy of the conviction." This raises a very interesting and important question, upon which the briefs furnish us little assistance.

The direct question here presented seems never to have been determined by this court. In Bise v. United States, 144 F. 374, 74 C. C. A. 1, 7 Ann. Cas. 165, the attempt was made in the trial court in the examination of one of the government's witnesses to show that the witness had been convicted of a felony. The court inquired whether it was for the purpose of impeachment or disqualification. The answer being that the purpose was disqualification, the court held that to disqualify the witness the record of conviction must be produced. This occurred in the Indian Territory, which at that time had no controlling statute on the subject. This court sustained the ruling of the trial court, quoting Prof. Greenleaf in support thereof. It will be noted that the case deals with the question of disqualifying a witness, and not with the question of affecting a witness' credibility. The distinction between competency and credibility of a witness should be borne in mind.

In Glover v. United States, 147 F. 426, 429, 430, 77 C. C. A. 450, 454 (8 Ann. Cas. 1184), this court again dealt with a situation where a prosecuting attorney inquired of witnesses as to whether they had not been arrested at some time, and said: "It is competent for the purpose of discrediting a witness to show that he has been convicted of a crime. The general rule is that the crime must rise to the dignity of a felony or petit larceny." Further the court said: "The proper evidence of a conviction of crime is the record thereof. * * * Whether it is permissible, in the absence of any statute in the Indian Territory regulating the practice in this respect, to undertake to prove by cross-examination of the witness, without the production of the record, that he had been convicted of a crime, for the purpose merely of affecting his credibility and not as to his competency, it will be time enough for this court to determine when the question is properly before it."

The question is now properly before this court. Therefore the time has arrived to determine it. At common law persons convicted of infamous crimes were incompetent to be witnesses at all, on the theory that they were so destitute of moral honesty that truth could not within them dwell. In nearly all of the states of the Union this disqualification of the witness is now removed, and one who has been convicted of crime is a competent witness, but the general provision of state statutes is that the conviction may be shown to affect credibility.

As to some crimes, such as perjury, it is pointed out by the Supreme Court in Rosen et al. v. United States, 245 U. S. 467, 471, 38 S. Ct. 148, 150 (62 L. Ed. 406), the disability to testify survived longer than some of the other common-law disabilities. The common-law rule that a witness previously convicted of a felony is disqualified to give testimony, is no longer the rule of the federal court. In Rosen et al. v. United States, supra, the Supreme Court said: "Satisfied as we are that the legislation and the very great weight of judicial authority which have developed in support of this modern rule, especially as applied to the competency of witnesses convicted of crime, proceed upon sound principle, we conclude that the dead hand of the common-law rule of 1789 should no longer be applied to such cases as we have here."

The decisions construing the statutes of the various states on this subject are not uniform as to just what class of crimes a witness may be proved to have been convicted of in order to affect credibility. This court, as we have heretofore pointed out in Glover v. United States, seems to approve the general rule that the crime must rise to the dignity of a felony or petit larceny.

In Neal v. United States of America (filed July 14, 1924) 1 F.(2d) 637, referring to the statutes enacted by the various states on this subject, this court said: "Under them it is generally held that proof of former conviction of a witness of any crime, regardless of grade, may be shown"—citing authorities. A felony is undisputably such grade of offense as by conviction thereof affects credibility. The question asked in the trial court related only to a felony. So the succinct question here is whether conviction of a felony may be shown by cross-examination of the witness or must be proved by the record.

We refer to some of the authorities and cases holding that the conviction must be proved by the record thereof. The follow-

ing words of Prof. Greenleaf are generally cited in support of the contention: "But, on the other hand, where the question involves the fact of a previous conviction, it ought not to be asked, because there is higher and better evidence which ought to be offered. If the inquiry is confined, in terms, to the fact of his having been subjected to an ignominious punishment, or to imprisonment alone, it is made, not for the purpose of showing that he was an innocent sufferer, but that he was guilty, and the only competent proof of this guilt is the record of his conviction. Proof of the same nature, namely, documentary evidence, may also be had of the cause of his commitment to prison, whether in execution of a sentence, or on a preliminary charge." Greenleaf on Evidence, § 457.

Perhaps the strongest statement of this theory is found in Hall v. Brown, 30 Conn. 551, where the court discusses the state statute of 1848 removing the disqualification of a witness by reason of his conviction of a crime, and holds that such conviction may be shown for the purpose of affecting his credit, but that the record of his conviction is the only evidence that can be introduced, and says pages 557, 558:

"The statute therefore authorizes no other mode of proving a witness unworthy of credit because of his presumed insensibility to the obligations of an oath, as evidenced by his commission of an infamous crime, but the record of his conviction, because his conviction can be proved only by the record, and we think the strictness of the rule is founded in the soundest reasons of justice and of policy. If the question of the witness' guilt or innocence of crime in fact, were permitted to be tried, issues would often be so greatly multiplied that the merits of the principal cause on trial would be lost sight of, and the rights of the litigating parties sacrificed. And it would also be doing great injustice to the witness to subject him to trial for crime in a case to which he was not a party. The common law therefore determined wisely when it excluded all evidence of the criminality of a witness except the record of his conviction. And we think the court ought not to depart from this wise and salutary rule any further than the plain import of the statute requires. The statute is an enabling or remedial one, and should be construed liberally in favor of the party for whose benefit it was made. It speaks only of persons who have been convicted of, not of those who have committed, crimes, and it provides that

such conviction, not such commission, may be shown to affect the credit of the witness."

See, also, as sustaining the record doctrine, Commonwealth v. Walsh, 196 Mass. 369, 82 N. E. 19, 124 Am. St. Rep. 559, 13 Ann. Cas. 642; Commonwealth v. Sullivan, 161 Mass. 59, 36 N. E. 583; Newcomb v. Griswold, 24 N. Y. 298; People v. Herrick, 13 Johns. (N. Y.) 82, 7 Am. Dec. 364; Commonwealth v. Quin, 5 Gray (Mass.) 478; Johnson v. State, 48 Ga. 116; Price et al. v. United States, 1 Okl. Cr. 291, 97 P. 1056; Zoline's Federal Criminal Law and Procedure, vol. 1, § 366; Murphy v. State, 108 Ala. 10, 18 So. 557; People v. Reinhart, 39 Cal. 449; Farley v. State, 57 Ind. 331; Williams v. United States, 1 Ind. T. 560, 45 S. W. 116; Boyd v. State, 94 Tenn. 505, 29 S. W. 901; Moore v. State, 96 Tenn. 209, 33 S. W. 1046; Southern Ins. Co. v. White, 58 Ark. 277, 279, 24 S. W. 425.

Among the cases and text-writers sustaining the right to show conviction of crime by cross-examination as affecting credibility, are the following, in the consideration of which and the weight to be attached thereto, should be noted that some of the states have statutes providing that the conviction may be shown either by record or by cross-examination; others, that it can be shown only by the record; while others have no provision as to method of proof:

"In this country there has been some hesitation in permitting a question the answer to which not merely imputes disgrace, but touches on matters of record; but the tendency now is, if the question be given for the purpose of honestly discrediting a witness, to require answer." Wharton's Criminal Evidence, § 474.

Underhill on Criminal Evidence, §§ 60, 61, referring to cross-examination of a defendant as a witness: "He may be questioned as to specific facts calculated to discredit him. Thus his previous arrest or indictment, his conviction of a felony, a previous imprisonment in a penitentiary or house of correction, his prior contradictory statements, disorderly actions, or the commission of offenses similar to that charged, attempts to bribe witnesses, or simulation of insanity, may all be brought out by questions put to him on his cross-examination, to show what credit his evidence should receive."

Wigmore on Evidence, vol. 2, § 1270: " * * * The result is that three types of rule now obtain in the different jurisdic-

tions: (1) The requirement of a copy in all cases; (2) the allowance of an admission on cross-examination of the witness to be impeached, but the requirement of a copy or an abstract when proof is made by another witness—this rarely by common-law decision, but widely by statute; (3) the allowance of recollection testimony either from the witness to be impeached or from another—this rarely, and by statute only. The second form is the only proper one, and now obtains in the majority of jurisdictions."

Thompson on Trials states (section 467): "There is a confusion in the authorities as to whether a witness may be asked, on cross-examination whether he has been arrested, indicted or convicted upon a criminal charge. One of the difficulties grows out of the question whether such a matter can be proved by secondary evidence, even by the admission of the witness, who must, of all men, be certain of the fact if it existed. The strain about secondary evidence in such a case is a mere quibble, totally destitute of common sense"—and cites many cases where a witness has been impeached on cross-examination by inquiry as to whether he has ever been convicted of a felony.

28 Ruling Case Law, § 213: "The weight of authority, however, clearly sustains the right to show such conviction by cross-examination."

In McLaughlin v. Mencke, 80 Md. 83, 87, 30 A. 603, 604, the court said:

"While there is some conflict in the authorities and text-books, as well as reported cases, upon this subject, we think the more reasonable and practicable rule is that which does not demand the production of the record when the object, as here, is solely for the purpose of discrediting."

In State v. Knowles, 98 Me. 429, 432, 57 A. 588, 589, 590, the court squarely discusses the question of whether to impeach a witness' credibility his conviction may be proved by questioning him on cross-examination, and points out that the question has been variously decided by different judicial tribunals; that formerly, when the conviction of an infamous crime rendered a witness incompetent, it was universally held that for that purpose the conviction could be proved by the record alone, and the court says:

"In many of those jurisdictions, however, where the conviction of crime no longer affects the competency, but simply goes to the credibility, of the witness, there has been a tendency, sometimes by legislative enactment and sometimes by judicial decision, to broaden the sources of evidence, and permit the conviction to be shown by cross-examination of the witness himself. In a technical sense the record may be the best evidence, and the rule of primariness may require its production. This general rule, however, is of no great value, unless in its application to the subject under consideration it is necessary for the interests of justice to avoid error, exclude falsehood, and promote the truth. It can hardly be claimed that a record of conviction is any more convincing to the mind, or less liable to error, than is the witness' own admission of the fact under oath. He may well be presumed to know what the truth is. There is very little possibility of his being mistaken as to the fact of the conviction, and none as to the identity of the party convicted. He has every inducement of self-interest to protect his good name and reputation, and it is inconceivable that he will falsely accuse himself."

Further the court says:

"The all-important thing to be proved is the fact of conviction. As to the form of proof, it is sufficient if it be reasonably free from the possibility of error. To hold that we cannot receive as evidence the witness' own admission of a fact which he has every inducement of self-interest to deny, an admission which can be wrung from him by the all-compelling power of truth alone, is to exalt the shadow above the substance, to return to the reasoning and results of the earlier and darker period of the law's development, rather than to those which have obtained and prevailed in modern and more enlightened times."

Vermont has a statute that conviction of a crime involving moral turpitude may be given in evidence to affect the credibility of a witness. In McGovern v. Hays & Smith et al., 75 Vt. 104, 53 A. 326, a witness was asked if he had not been convicted of the offense of selling intoxicating liquor, though such offense does not involve moral turpitude. The court referring to this statute says that it was enacted to remove a common-law disability, or incompetency, and that "it makes it a matter of legal right to attack the credibility of a witness by showing by independent evidence that he has been convicted of a crime involving moral turpitude." It holds the statute does not limit the field of cross-examination which in the sound discretion of the court counsel may be allowed to go into with a view to shaking the credibility of a witness,

and on page 328 (75 Vt. 110) the court said: "We conclude that a witness may be cross-examined as to conviction and imprisonment whenever such conviction and imprisonment are proper to be shown."

In Commonwealth v. Racco, 225 Pa. 113, 73 A. 1067, 133 Am. St. Rep. 872, the court said: "If the record of the conviction of a crime by a witness is the only evidence to be received of that fact to affect his credibility, in many cases, of which the present is an illustration, his credibility could not be impeached, though it ought to be; for the record may be in a foreign state or country, and not obtainable in time to be used when found to be needed at the trial."

In United Railways & Electric Co. of Baltimore v. Phillips, 129 Md. 328, 99 A. 355, L. R. A. 1917C, 384, it was held that a witness could be asked on cross-examination, to impair his credibility, whether he had been arrested, tried, and convicted in the criminal court of Baltimore for the larceny of a watch chain.

In State v. Martin, 124 Mo. 514, 28 S. W. 12, the witness was asked how many times he had been in the county jail on sentence for crime. The court says it was clearly asked for the purpose of honestly discrediting the witness, and it was unnecessary, under the circumstances, to produce the record of conviction (citing Wharton's Crim. Ev. [9th Ed.] § 474).

In Younger v. State, 100 Ark. 321, 140 S. W. 139, it was held that to test the witness' credibility the state had the right on cross-examination to ask the witness if he had not been convicted of petty larceny and had not been confined in the penitentiary.

In Hunt v. State, 114 Ark. 239, 169 S. W. 773, L. R. A. 1915B, 131, Ann. Cas. 1916D, 533, it was held that under Kirby's Digest, § 3138, as amended by Laws 1905, p. 143, where accused in a prosecution for assault to rape became a witness in his own behalf the court properly permitted the state to prove by him on cross-examination that he had been previously convicted of a similar offense, to affect his credibility. It held a party cannot be asked about a mere accusation or indictment, but may be asked about a judgment of conviction, quoting Vance v. State, 70 Ark. 272, 68 S. W. 37.

In Burdette v. Commonwealth, 93 Ky. 76, 18 S. W. 1011, the court holds that the objection to asking orally on cross-examination because there is higher and better evidence is rather more technical than substantial, and says: "For certainly previous conviction for a crime could not be more safely and satisfactorily shown by record evidence than by admission of the person himself who was convicted."

In James Wilbur v. Luther J. Flood, 16 Mich. 40, 43, 44 (93 Am. Dec. 203), the court said: "It has always been found necessary to allow witnesses to be cross-examined, not only upon the facts involved in the issue, but also upon such collateral matters as may enable the jury to appreciate their fairness and reliability. To this end a large latitude has been given, where circumstances seemed to justify it, in allowing a full inquiry into the history of witnesses, and into many other things tending to illustrate their true character. * * * And even as to previous conviction of infamous crimes, the rule is seldom of any great service, because no one can be expected to know in advance what witnesses may appear, nor what may have been their history. Unless the remedy is found in cross-examination, it is practically of no account. * * * We think the case comes within the well-established rules of cross-examination, and that the few authorities which seem to doubt it, have been misunderstood, or else have been based upon a fallacious course of reasoning, which would, in nine cases out of ten, prevent an honest witness from obtaining better credit than an abandoned ruffian."

As supporting the cross-examination theory, see Elliott on Evidence, § 216; 40 Cyc. p. 2622. See, also, State v. Babcock, 25 R. I. 224, 55 A. 685; State v. Ellwood, 17 R. I. 763, 24 A. 782; Keaton v. State, 41 Tex. Cr. R. 621, 57 S. W. 1125; State v. Ekanger, 8 N. D. 559, 80 N. W. 482; Schnase v. Goetz, 18 N. D. 594, 120 N. W. 553; Williams v. Commonwealth (Ky.) 52 S. W. 843; State v. Lawhorn, 88 N. C. 634; State v. Taylor, 118 Mo. 153, 24 S. W. 449; State v. Forsha, 190 Mo. 296, 88 S. W. 746, 4 L. R. A. (N. S.) 576; State v. Pratt, 121 Mo. 566, 26 S. W. 556; People v. Putman, 129 Cal. 258, 61 P. 961; Squiers v. State, 42 Fla. 251, 27 So. 864; Redsecker v. Wade, 69 Or. 153, 134 P. 5, 138 P. 485, Ann. Cas. 1916A, 269; State v. Reyner, 50 Or. 224, 91 P. 301; Clemmons v. State, 39 Tex. Cr. R. 279, 45 S. W. 911, 73 Am. St. Rep. 923; Dotterer v. State, 172 Ind. 357, 88 N. E. 689, 30 L. R. A. (N. S.) 846; Parker v. State, 136 Ind. 284, 35 N. E. 1105; Taylor on Evidence (6th Ed.) p. 1244, § 1294; Gillett's Indirect and Collateral Evidence, § 91; Nelson v. State, 3 Okl. Cr. 468, 106 P. 647; Keys v. United States, 2 Okl. Cr. 647, 103 P. 874; Smith v. State, 64 Md. 25, 20 A. 1026, 54 Am. Rep. 752; McLaughlin v. Mencke, 80 Md. 83, 30 A. 603; Mattingly v.

Montgomery, 106 Md. 461, 68 A. 205; Clemens et al. v. Conrad, 19 Mich. 170; People v. Higgins, 127 Mich. 291, 86 N. W. 812; People v. Hoffman, 154 Mich. 145, 117 N. W. 568; State v. O'Brien, 81 Iowa, 93, 46 N. W. 861; People v. Noelke, 94 N. Y. 137, 46 Am. Rep. 128; State v. Curtis, 39 Minn. 357, 40 N. W. 263; Shafer v. City of Eau Claire, 105 Wis. 239, 81 N. W. 409; Koch v. State, 126 Wis. 470, 106 N. W. 531, 3 L. R. A. (N. S.) 1086, 5 Ann. Cas. 389; Lang et al. v. United States, 133 F. 201, 66 C. C. A. 255; Ball v. United States, 147 F. 32, 78 C. C. A. 126; MacKnight v. United States (C. C. A.) 263 F. 832; Murray v. United States, 53 App. D. C. 119, 288 F. 1008; Wheeler v. United States (C. C. A.) 293 F. 588; Fields et al. v. United States, 221 F. 242, 137 C. C. A. 98; Christopoulo v. United States, 230 F. 788, 145 C. C. A. 98; Tierney v. United States (C. C. A.) 280 F. 322.

As sustaining the proposition that the matter of permitting such question to be asked is within the discretion of the court, see State v. Slack et al., 69 Vt. 486, 38 A. 311; Wroe v. State, 20 Ohio St. 460; Storm v. United States, 94 U. S. 76, 24 L. Ed. 42; Commonwealth v. Racco, 225 Pa. 113, 73 A. 1067, 133 Am. St. Rep. 872; Parker v. State, 136 Ind. 284, 35 N. E. 1105; Real v. People, 42 N. Y. 270.

The rule requiring record evidence, or the best evidence of which a case in its nature is susceptible, is to prevent fraud, and reduce possibility of error to a minimum. In United States v. Reyburn, 6 Pet. 352, 366, 8 L. Ed. 424, the Supreme Court of the United States said:

"The rule of evidence does not require the strongest possible evidence of the matter in dispute, but only that no evidence shall be given which, from the nature of the transaction, supposes there is better evidence of the fact attainable by the party. It is said in the books, that the ground of the rule is a suspicion of fraud, and if there is better evidence of the fact, which is withheld, a presumption arises that the party has some secret or sinister motive in not producing it. Rules of evidence are adopted for practical purposes in the administration of justice, and must be so applied as to promote the ends for which they are designed."

How can there be any particular possibility of fraud or error in asking a witness a question which it is in his interest to deny, and the answer to which is wrung from him by the court processes of securing the

truth? Where life and liberty depend upon the testimony of another, it is in the interest of justice that the jury should have before them every fact affecting the credibility of the witness. Otherwise, a party may be deprived of life and liberty by the testimony of a criminal, as well as by the evidence of one whose life is stainless and character unquestioned.

Certain refinement of reasoning on this question is indulged in by some of the courts, as for instance in Real v. People, 42 N. Y. 270, 281, the court refers to the injustice (where a witness of whom the opposite party has never before heard gives material testimony, and it is learned that most of the life of such witness has been spent in jails and other prisons for crime) of holding that the fact could not be proved by the witness himself, but could be shown only by records existing in distant states which would, for the purpose of the trial, be wholly inaccessible, and says: "No danger to the party introducing the witness can result from this class of inquiries, while their exclusion might in some cases, wholly defeat the ends of justice."

The court concluded that the witness could be asked whether he had been in the jail or penitentiary or state prison, and how much of his life he had passed in such places, but says: "When the inquiry is confined as to whether he has been convicted, and of what, a different rule may perhaps apply. This involves questions as to the jurisdiction and proceedings of a court of which the witness may not be competent to speak" —and says that "the extent of the cross-examination of this character is somewhat in the discretion of the court, and must necessarily be so to prevent abuse"; that "this discretion should be liberally exercised with a view to arrive at the truth."

That a witness may be asked whether he has been in the penitentiary and for how long, as this case holds and as many of the authorities hold, and yet to say that he cannot be asked whether he was in the penitentiary as the result of a conviction of a felony, is a technical refinement that does not appeal to common sense and is not in the interest of truth and justice. Why should a party be put to the expense of securing the record of conviction in possibly some far-distant court, and why should a trial be delayed in order that such record may be secured, if the witness who would know the fact better than any one else is willing to testify against his own interest and against his own standing that he has been convicted of a felony? A witness could

be asked on the stand as to the date of his birth or the fact of his marriage. There is in most of the states a written record of birth, likewise written evidence of marriage by return to the proper county official, and the question as to birth or marriage would call for secondary evidence, just as much as the question of whether he had been convicted of a felony. All would be important facts in his life, which the witness would know better than any one else.

From Milo Clemens et al. v. Louis Conrad, 19 Mich. 170, 175, we quote: "We think the reasons for requiring record evidence of conviction have very little application to a case where the party convicted is himself upon the stand and is questioned concerning it, with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight that it may almost be looked upon as purely imaginary, while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent."

This was approved as correct doctrine by the Seventh circuit in Lang et al. v. United States, 133 F. 201, 66 C. C. A. 255. With this we agree. We are satisfied that the correct rule, based upon sound principle and supported by the overwhelming weight of authority, is to permit the inquiry to a witness on cross-examination as to whether he has been convicted of a felony. We hereafter refer to a limitation of the rule which we think should be imposed.

The question naturally arises as to how far the inquirer is bound by the answer of the witness. While the cross-examiner is allowed a wide range under the discretion of the court for the purpose of showing the character of the party on the stand, and may go into certain collateral matters, the general rule is that he is bound by the answer he obtains. Johnson v. United States, 215 F. 679, 131 C. C. A. 613, L. R. A. 1915A, 862; Bullard v. United States, 245 F. 837, 158 C. C. A. 177. Zoline's Federal Criminal Law and Procedure, § 369, lays down the rule: "Contradiction of testimony collateral to the issue on trial, introduced for impeachment, is not ordinarily permissible."

We think, however, the question of the witness' credibility is not a mere collateral matter. It bears on every issue involved as to which such witness gives testimony, and that which impairs credibility is material in the highest degree. The party inquiring of a witness as to his conviction of a felony should not be bound by a false answer, if he can procure the record of conviction and refute the same. The court cannot, however, enter upon a trial of the question of conviction, and therefore the refutation of the witness' answer should be confined to the record of the conviction. Unless said record is produced the answer of the witness is binding on the inquirer. That risk he takes in asking the question.

Taylor on Evidence, vol. 3, § 1438, says on this subject: "Fourthly, it may be broadly laid down that where questions, put to a witness on cross-examination for the purpose of directly testing his credit, relate to relevant facts, his answers may be contradicted by independent evidence. If, however, questions are put with this object upon irrelevant matters, the answers given by the witness cannot be contradicted. The question, what matters connected with the witness are or are not relevant, has been discussed on a former page. In addition to what is stated there, it should be observed, that inquiries respecting the previous conduct of a witness will almost invariably be regarded as irrelevant, if not connected with the cause or the parties. Therefore, if a witness be questioned on cross-examination respecting the commission of crimes by him on some former occasion, his answers must (except in the case of an actual conviction) be taken as conclusive."

There should be a limitation to the rule hereinbefore announced, and that limitation is that the right to ask a witness on cross-examination the question whether he had been convicted of a felony, is subject to some extent to the regulatory, sound discretion of the court to prevent the abuse thereof. The question may be asked, not for the purpose of honestly discrediting the witness, but really to raise imputations against his character, where there is no foundation whatever therefor, in order to affect the jury, and hence there should be some discretion in the court to determine whether the question is asked for the purpose of honestly discrediting the witness or whether its purpose is merely to arouse unjust suspicion in the minds of the jurors. The difficulties and annoyances of the witness' chair should not be augmented by unwarranted insinuations or abuse perpetrated by means of cross-examination. There is no difficulty, we think, in a court holding an examination within bounds by the exercise of a sound discretion, and where the question is not asked with the honest pur-

pose of discrediting the witness the court has it within its power in the exercise of such discretion to protect the witness and prevent unfair imputations. Our conclusion in the whole matter is that a witness may be asked on cross-examination, for the honest purpose of affecting credibility, whether he has been convicted of a felony, subject to such limitation as the sound discretion of the court may dictate to prevent abuse of the right; that the questioner is bound by the reply, unless the record of conviction is produced to refute the answer of the witness.

In this case the witness, Sparks, was a leading witness for the government. Without the evidence of Sparks there would not be sufficient evidence to warrant a conviction. There is nothing to show that the question was not asked in good faith for the honest purpose of affecting the credibility of the witness. The refusal to permit the answer was error and was prejudicial.

The case is therefore reversed and remanded, with instructions to grant a new trial.