James E. HARRIS, Appellant,

v.

**NORFOLK SOUTHERN RAILWAY,**
a corporation, Appellee.

No. 8831.

United States Court of Appeals
Fourth Circuit.

Argued March 26, 1963.

Decided June 29, 1963.

Louis B. Fine, Norfolk, Va. (Howard I. Legum, and Fine, Fine, Legum & Schwan, Norfolk, Va., on brief), for appellant.

William C. Worthington, Norfolk, Va. (Worthington, White & Harper, Norfolk, Va., on brief), for appellee.

Before HAYNSWORTH and J. SPENCER BELL, Circuit Judges, and PREYER, District Judge.

HAYNSWORTH, Circuit Judge.

This Federal Employers' Liability Act plaintiff appeals from a judgment entered upon a verdict in his favor in the amount

of $15,000. On appeal, his principal contention is that the amount of the verdict was inadequate. Secondarily, he complains of the denial of a requested instruction relating to damages and of the sufficiency of the instruction actually given respecting the damages. We think the plaintiff is not entitled to the new trial he asks.

On April 23, 1957, Harris, a laborer employed by the Norfolk Southern Railway Company, was using a crowbar to nip a new tie close to the rail while two other men were driving the spikes, one on either side of the rail. Harris testified that his two fellow employees were racing to see who could first drive home his spike when the maul of one struck the side of the rail instead of the spike head. As a result of the blow, a small piece of steel in the shape of a flat half moon flew off and embedded itself in the fleshy part of the plaintiff's forearm on the posterior side at a point approximately four inches above the wrist. On the same day, the fragment of steel was removed surgically after X-rays had been taken revealing the location of the steel fragment. Those X-rays also revealed an old, healed fracture of the ulna, at a point approximately two inches above the wrist. The surgeon testified that the steel fragment had not touched the ulna bone, and all of the doctors who examined the X-rays taken on April 23, 1957, agreed that the fracture of the ulna bone was then old and fully healed. There was medical testimony that the bone fracture occurred at least six months before April 1957 and could have occurred as much as thirty-five years earlier.

After a period of convalescence, the plaintiff returned to work for the railroad, doing heavy, manual labor.

Sometime later, however, he began to complain of pain in the area of his left wrist, hand and lower forearm. As a result of these complaints, in March 1959, almost two years after the injury, a neurosurgeon exposed the ulna nerve on the anterior side of the left wrist and forearm. He found no evidence of nerve injury or defect, but reached the conclu-' sion that the nerve was being irritated by excessive bony growth at the point of the old fracture of the ulna. He severed some fascial bands which seemed to be compressing the nerve against the callus of the old fracture.

The neurosurgical procedure on the anterior side of the left wrist and forearm provided some temporary relief, and Harris returned to light work on the railroad. Pain in the wrist area returned, or persisted, however, and thereafter, three separate surgical operations were performed in the area of the left wrist. There was some congenital malformation of the small bones of the wrist. There was arthritic change and distortion of the ulna bone as a result of the old fracture. Some of the wrist bones were fused and a portion of the ulna was removed. Harris, however, continued to complain of intense pain and suffering in his left wrist, hand and arm.

Finally, Harris was referred to a psychiatrist. He and another psychiatrist who examined Harris at the instance of the defendant, agreed that much of his pain was psychoneurotic. They were of the opinion that Harris was suffering from paranoia, or a pronounced conversion reaction evidenced by hostile and unreasoned resentment based upon an unfounded assumption of mistreatment by the several doctors who had operated upon him or attended him. They were of the opinion that Harris was not a malingerer; his pain, though largely the result of the psychoneurosis, was nonetheless real to him. There was a suggestion that conclusion of this litigation might result in substantial alleviation of the pain, but there was no assurance that it would. In the meanwhile, no therapy would be helpful, and Harris, at the time of trial, because of his psychoneurosis, was completely disabled from doing any work.

The plaintiff's primary contention on appeal is plainly without merit. He says that in light of the actual expenses and loss of wages already experienced, the $15,000 verdict allowed him nothing for his pain and suffering, past or future,

or for his future loss of earnings. The contention, however, assumes all of the principal issues involved in the trial. It assumes that all of the difficulties experienced by the plaintiff with his wrist and with the fractured ulna were the result of the injury on April 23, 1957 when the fragment of steel entered the fleshy part of his forearm on the posterior side. There is nothing in the general verdict of the jury to suggest that the jury found any relation between the injury in April 1957 and the later difficulties he experienced with his wrist and his personality.

At best, the evidence established but a tenuous basis for a finding that the plaintiff's physical and emotional troubles, for which he was treated in 1959 and subsequent years, stemmed from the accident of 1957. Several doctors expressed the opinion that some, or all of them, were related to the old fracture of the ulna. Those who had been told by the plaintiff that the piece of steel fractured the ulna, expressed an opinion that all of the troubles flowed from the injury of April 1957, but they predicated their opinion of causation solely on the bone fracture. Their opinion, therefore, is meaningless, unless the fracture of the ulna actually occurred when the fragment of steel struck the plaintiff's forearm. The only testimony suggesting that the bone was broken in 1957 is that of the plaintiff, who denied having sustained any earlier injury to his forearm.

Under these circumstances, the jury would have been warranted in finding that the fracture of the ulna bone and all of the difficulties later experienced by the plaintiff with his left wrist were wholly unrelated to the injury to his forearm sustained in April 1957, while that injury, at most, was a relatively minor contributing cause of the emotional difficulties which became evident later in the plaintiff's unreasoned resentment directed toward all of the many doctors who had treated or attended him. If any other finding was permissible, the suggested finding is in ac-

cordance with the great weight of the testimony. Since the jury's verdict was general only, there is no basis for the plaintiff's assumption that the jury found as a fact that the injury of 1957 was the direct or precipitating cause of all of the physical and emotional difficulties for which he was treated in 1959 and subsequent years. Without that assumption, the jury's verdict, far from being inadequate, was liberal and generous.

A more difficult question arises with respect to the sufficiency of the charge on the question of damages, for the charge in that respect is far from a model of completeness.

The District Court's instructions to the jury as to the damages were as follows:

"If you believe from a preponderance of the evidence that the plaintiff, James E. Harris, was injured and that his injuries resulted in whole or in part from the negligence of any employee of the Norfolk Southern Railway Company, you shall return your verdict in favor of the plaintiff against the defendant for such damages as you deem fair and just for the injuries and losses which were proven by reasonable certainty to have been sustained by reason of the accident of April 23, 1957.

"The Court instructs the jury that if they believe from a preponderance of the evidence that the defendant is liable to the plaintiff in this action, then in assessing damages against the plaintiff, you should determine the amount of damages suffered by the plaintiff directly and proximately in consequence of his injury, and you should find the amount of damages to be such a sum of money as will fairly, justly and adequately compensate him for his injury. In determining the amount of such damages, you may take into consideration his age, earning capacity, and the character, extent and severity of his injury, the pain, inconvenience and embarrassment, if any,

that he has endured up to the present time, and the pain, inconvenience and embarrassment, and suffering, if any, that it is reasonably certain he will endure in the future; you may also take into consideration such disability, if any, as he has suffered up to the present time and such disability, if any, as it is reasonably certain he will suffer in the future therefrom; you should take into consideration the plaintiff's mental anguish, if any, his loss of wages, if any, and you will consider the above elements, if any, so far as they have been proved by a preponderance of the evidence to have resulted from the accident in question; you will thereby determine from the evidence what sum will be fair and just compensation for the plaintiff's injury."

■ The Court refused the defendant's request for a mandatory instruction that there was insufficient proof to connect the troubles the plaintiff experienced with his wrist to the 1957 injury. It also refused a request, designated P-X, submitted by the plaintiff in the following language:

"The court instructs the jury that if the piece of steel on April 23, 1957, the date of the accident, precipitated the plaintiff's mental disorder, and if the jury finds in favor of the plaintiff, the jury shall award damages for the plaintiff's mental disorder.

"The defendant railroad takes the plaintiff in the condition he was in at the time of the accident.

"The court further instructs the jury that if you find in favor of the plaintiff, he is entitled to recover damages, even if you find that the piece of steel did not fracture the ulna bone."

The District Court properly refused the requested instruction P-X. It was incomplete and fragmentary and, if given, was calculated more to confuse than to enlighten the jury. Neverthe-

less, it should have served as a reminder to the Court of the appropriateness of instructions which would have more adequately pointed up the principal issue at the trial, the connection, or lack of connection, between the plaintiff's physical and emotional infirmities and the injury he suffered in 1957. That issue would have been illumined had the Court marshaled the evidence for the jury, and, in that connection, referred to the well-established principle that the tort-feasor is liable for all of the damages sustained as a result of the physical injury he inflicts, though, because of some latent infirmity or pre-existing condition, the nature and extent of the damages proximately flowing from the injury were unusual or even unforeseeable at the time the injury was inflicted. If such instructions were given, however, the Court, in fairness, should have gone further to clearly and unequivocally instruct the jury that they should not include in their damage award to the plaintiff anything on account of the plaintiff's troubles with his wrist, if it found that those troubles were the result of congenital and traumatic malformations of the bones existing before the plaintiff was struck by the piece of steel, and the blow was not an aggravation of the pre-existing condition. The question then is whether, in the absence of some balanced enlargement of the instruction actually given, it can be said that in all likelihood the jury was misled, or that the Court's guidance was so deficient that there well may have been a miscarriage of justice.

The issue as it was developed by the testimony was not complicated. The plaintiff's effort throughout the trial was to connect the neurosurgical operation of March 6, 1959 and the three subsequent orthopedic operations, and, through them, the emotional disorder, to the entry of the piece of steel into the plaintiff's forearm in April 1957 and its surgical removal. He undertook to do this by denying any previous injury and by the submission of medical testimony that the subsequent difficulties with the wrist resulted from and were related to

the fracture of the ulna bone. Throughout the trial, the defendant strove unsuccessfully to exclude evidence of the plaintiff's physical difficulties and infirmities associated with the bone fracture. Its efforts to exclude such evidence were consistently overruled by the Court, at times in the presence of the jury. Thus, the principal issue in the case was clearly outlined, and there was nothing in the evidence to suggest that the defendant might not be fully responsible for all of the plaintiff's emotional and physical difficulties, if, in fact, they resulted from the injury of April 1957, even though the result was not immediate, and this, in turn, depended upon the factual issue as to whether or not the ulna bone was broken in 1957 by the steel fragment.

Two psychiatrists testified, one offered by the plaintiff and one offered by the defendant. The two psychiatrists were in substantial agreement as to the plaintiff's present psychiatric disability, and each related the disability directly to the surgical and medical treatments to which the plaintiff had been subjected. The defendant sought to escape liability for the psychiatric disorder only by disassociating the injury of 1957 and the fracture of the ulna bone.

When the narrow issue was thus so clearly defined by the testimony, therefore, the jury could not have been misled by a very general charge instructing them to award to the plaintiff damages "which will fairly, justly and adequately compensate him for his injury." Since the jury had witnessed the defendant's unsuccessful efforts to exclude evidence of the plaintiff's more recent medical disabilities, and since the sole important factual issue in the case was whether the break in the plaintiff's ulna bone was old and fully healed in April 1957, as the doctors who examined the X-rays testified, or whether it was a fresh break caused by the fragment of steel as the plaintiff impliedly testified by denial of an earlier injury, the jury could hardly have supposed that the issue of the defendant's accountability for the later disabilities had been removed from

its consideration. When the difference between the parties had been so clearly limited to this one principal narrow area of factual disagreement, the absence of full and complete instruction on tangential legal questions was not fatal, though, under other circumstances, their absence might have resulted in an unfair submission.

Considering the charge of the Court as a whole against the background of the factual issue as framed by the testimony, and the jury's verdict, we find no basis for a conclusion that the jury was misled, or was likely to have been misled, by the Court's charge or by the absence of references to legal questions which might have been crucial if the factual issue had been less clearly defined. Under the circumstances, we conclude the Court's submission of the case to the jury was fair and that the plaintiff's motion for a new trial was properly denied.

Affirmed.

J. SPENCER BELL, Circuit Judge (dissenting).

The principal controversy between the parties was whether or not the plaintiff's physical and mental disabilities were caused by the accident in 1957. However "tenuous" the basis for this may appear to this court upon review of the record, and I do not agree that it was tenuous, the plaintiff was entitled to have the issue passed upon by a jury. The majority concedes the failure of the charge properly to marshal the evidence on this issue for the jury. On this point, plaintiff's counsel objected and tendered an instruction to the court, thus bringing squarely to the court's attention the inadequacy of the charge. The fact that the issue was drawn to the jury's attention by counsels' fight to include or exclude evidence on the issue instead of excusing the inadequacy of the charge, only compounds it.

The size of the verdict—too small if the plaintiff's physical and mental disabilities were caused or aggravated by the accident—and too large if they were not—strongly suggests that the jury did

not understand the issue. Error in a charge need not be by a direct misleading of the jury; it may be, as I think it was in this instance, from a neglect and refusal to lead the jury on the chief issue. In the absence of an adequate charge, we have no right to speculate on whether or not the jury was misled. A charge which correctly gives an abstract statement of the law, but which does not apply the law to the facts of the case, is misleading and prejudicial. Cf. Lachman v. Pennsylvania Greyhound Lines, 160 F.2d 496 (4 Cir. 1947).